## THE JAMES SANATORIUM *v.* YADKIN RIVER COMPANY.

(Filed 18 November, 1914.)

**Corporation — Officers—Vice President—Authority—Trials—Evidence—Nonsuit.**

In an action against a·corporation to recover for medical attention, and care of its employee by the plaintiff sanatorium, the defendant resisted recovery upon the ground that it had not authorized the services rendered. There was evidence tending to. show that the employee was carried to the sanatorium by the salaried physician of the defendant company, and thereafter its vice president called up the plaintiff by phone and directed that special. care be given this patient; that the bill should be sent to him and that the defendant would pay it; and, also, that formerly the defendant had paid for the attention given by the plaintiff to another employee on such authorization. *Held*, the position of vice president of a corporation does not necessarily empower this officer to bind the company by such acts; but the evidence in this case was sufficient to be submitted to the jury upon the question of his authority, and judgment of nonsuit was properly denied.

APPEAL by defendant from *Shaw, J.,* at March Term, 1914, of SCOT-LAND.

*Cox & Dunn for plaintiff.*
*Walter H. Neal for defendant.*

CLARK, C. J. This is an action to recover of defendant for medical services rendered one Fred Flake. Practically the only question presented is the refusal to nonsuit.

Flake was an employee of defendant. Fred W. Abbott was its vice president and Dr. Rufus Jackson its physician. It was in evidence that Flake was brought to the hospital by Dr. Jackson, who stated that he had brought him to the hospital by order of Abbott, and that the plaintiff would send its bill to the defendant, who would pay it. The next day Mr. Abbott called over the phone from the factory of the defendant, to the president of the plaintiff company, Dr. James, and inquired, "How is my man Flake I sent you last night?" He further asked the details and told Dr. James to "give him every possible attention, and, if he needed any special care, to give him special nurses, and he would see that there was no trouble about the money, and to send the bill to him, and the Yadkin River Power Company would pay it." Prior to that time the plaintiff had rendered medical services to one McLean, a typhoid fever patient, at the request of Mr. Abbott and Dr. Jackson, who stated that the Yadkin River Power Company would pay the bill, and it was paid, according to the evidence of both plaintiff and defendant.

The chief contention is that the office of vice president does not necessarily confer power to contract debts for the corporation. It is true enough that the power of a vice president depends not upon his title, for his function differs according to the by-laws or according to the use and practice of the particular company. In some railroad companies there are many vice presidents who have great authority. There are other companies in which the vice presidency is a mere ornamental position.

In this case there was evidence sufficient to go to the jury to establish the authority of the vice president to act for the company in cases of this kind. His calling up the president of the sanatorium company from the office of the defendant, stating to him that Flake had been sent there by his authority, making full inquiries about him and directing the bill to be sent to him and saying that the defendant would pay it, and asking for special attention to be given to Flake, together with the fact that Flake was also carried to the sanatorium by the salaried physician of the defendant, and the further fact that another patient had been sent there by the vice president, accompanied by the physician of the company, and that by their direction the bill had been sent to the defendant and paid by it—all these things were sufficient to submit to the jury on the question as to the authority of the vice president in this case.

No general rules can be laid down as to the power of a vice president to bind the company, which would arise as a presumption in the case of the president. But it would have been error to direct a nonsuit upon this evidence. The exceptions to the evidence do not require discussion. There was no exception to the charge.

No error.